[Cite as *Cline v. Market Street Assocs., L.L.C.*, 2022-Ohio-3298.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Shonda Cline et al., | : | |
| Plaintiffs-Appellants, | : | No. 22AP-77 |
| | | (C.P.C. No. 20CV-8305) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Market Street Associates, LLC et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 20, 2022

**On brief:** *Schiff & Associates Co., LPA*, and *Terry V. Hummel*, for appellants. **Argued:** *Terry V. Hummel.*

**On brief:** *Pelini, Campbell & Ricard, LLC, Joshua R. Bills,* and *Nicholas S. Bobb,* for appellee, Market Street Associates, LLC. **Argued:** *Nicholas S. Bobb.*

**On brief:** *Markesbery & Richardson Co., L.P.A,* and *Barry A. Rudell, II,* for appellee, Ohio Equities, LLC. **Argued:** *Barry A. Rudell.*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Plaintiffs-appellants, Shonda and Tim Cline, appeal from an August 13, 2021, judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, Ohio Equities, LLC, ("Ohio Equities"), and a January 10, 2022, judgment in favor of defendant-appellee, Market Street Associates, LLC, ("Market Street"). For the reasons that follow, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   Appellants brought this action against appellees, Market Street and Ohio Equities, seeking damages for bodily injury sustained by appellant, Shonda Cline, when she tripped and fell on the sidewalk in front of the Rusty Bucket Restaurant and Tavern ("Rusty Bucket"), located at 180 Market Street, New Albany, Ohio.  Shonda Cline's husband, appellant, Tim Cline, seeks damages for loss of consortium.

{¶ 3}   Shonda Cline testified at her deposition that on December 31, 2018, she and her husband went to the Rusty Bucket with other family members.[1]  It was mid-afternoon when they arrived and they stayed more than an hour before Shonda Cline exited the front door of the restaurant and headed toward the parking lot.  Tim Cline had left earlier to get the car.  Shonda Cline testified that she had been frequenting the Rusty Bucket for years.  She estimated that she had exited the restaurant through the front door and walked across the sidewalk in front of the building into the parking lot on numerous occasions prior to December 31, 2018.  The weather outside that day was overcast but dry and there were no obstructions in Shonda's path.

{¶ 4}   According to Shonda Cline, when she left the Rusty Bucket she saw that her husband had stopped their vehicle alongside the curb in front of the restaurant.  Shonda Cline testified that she stepped on the sidewalk and began walking to the car.  She was looking straight ahead at other family members as they entered the vehicle.  She was not looking down.  She testified as to the events that occurred when she fell as follows:

> Q. Take me through -- you said you were -- you said you tripped. What happened to make you trip?
>
> A. I tripped over the sidewalk.
>
> Q. And which -- describe for me how you tripped.
>
> A. My toe hit, and I tripped -- I fell over. I landed on the pavement by the car.
>
> Q. And which toe did you hit?
>
> A. I don't recall.
>
> Q. Do you recall where on the sidewalk your toe hit?
>
> A. Yes.
>
> Q. All right. Where was that?

---

[1] The July 12, 2021 deposition was conducted via Zoom conference due to the pandemic.

A. It was right by where the tree should have been but wasn't.

(July 12, 2021 Dep. Tr. at 38.)

{¶ 5} Shonda Cline testified that her husband took several photographs of the area either the day of or the day after the fall. Shonda Cline stated that the bricks in the area where she tripped and fell varied in height, but she could not estimate the degree of variance. The bricks surrounded a squared out area of soil and bark mulch where a tree would ordinarily be positioned. It appears from the photographs, that the tree had been removed and the soil and bark mulch had been leveled out where the tree had been growing.

{¶ 6} Shonda Cline was subsequently re-deposed on August 9, 2021. In her August 9, 2021 deposition, Shonda Cline provided additional testimony regarding the photograph previously identified as Exhibit B:

Q. The next one is Exhibit B. I have handed you that. Do you recall seeing Exhibit B?

A. Yes.

Q. We talked about it extensively. Are you able to circle on here where the fall happened?

A. Can you clarify?

Q. Sure. Are you able to put a circle on Exhibit B where you tripped or fell?

A. Yes.

Q. All right. Go ahead and do that for me, then. You put a circle on Exhibit B, the area where there is five, six, seven bricks near a curb?

* * *

Q. There appears to be a darker spot, a curb, bricks. Do you know what you tripped on?

A. The bricks.

Q. Do you know what bricks that you tripped on?

A. I don't think so.

Q. But it would have been within that circled area you believe?

A. Yes.

Q. It was a lighter color brick and not the darker color?

A. Correct.

(Aug. 9, 2021 Dep. Tr. at 6-8.)

{¶ 7}    On December 28, 2020, appellants filed a complaint alleging claims for negligence and loss of consortium against several defendants including appellee, Market Street, the company that owned the Rusty Bucket, and Ohio Equities, the company that managed the property.  On February 18, 2021, appellants filed an amended complaint maintaining Market Street and Ohio Equities as defendants, but removing the other named defendants.

{¶ 8}    On July 8, 2021, Ohio Equities filed a motion to dismiss the amended complaint, pursuant to Civ.R. 12(B)(6), arguing that appellants failed to commence their action within the two-year limitation period in R.C. 2305.10, pertaining to claims for bodily injury.  On July 27, 2021, appellants filed a motion for leave to file a second amended complaint asserting additional allegations against Ohio Equities.  On August 13, 2021, the trial court issued a decision and entry denying appellants motion to amend, and granting Ohio Equities' motion to dismiss.  The trial court ruled that the statute of limitations barred appellants amended complaint against Ohio Equities, and that the additional allegations in the proposed amended complaint would not remedy appellants' failure to timely commence their action.

{¶ 9}    On October 4, 2021, Market Street filed a motion for summary judgment arguing that appellants failed to produce evidence that would permit a reasonable trier of fact to conclude that the alleged defect in the sidewalk constituted a substantial hazard to invitees.  Market Street also argued that it owed appellants no duty with respect to the alleged defect in the sidewalk because it was open and obvious to anyone using it.  Market Street submitted transcripts of the July 12, 2021, and August 9, 2021, deposition testimony of appellant, Shonda Cline, in support of the motion.  Market Street also submitted two of the photographs discussed by Shonda Cline at her depositions and identified as Exhibits A and B.[2]  Appellants opposed the motion arguing that the evidence gave rise to a factual issue whether there was a substantial defect in the sidewalk, and whether the attendant

---

[2] Shonda Cline also testified about several other photographs taken by Tim Cline on or about the date of her fall. These photographs were authenticated by Shonda Cline at her July 12, 2021, deposition and marked as Exhibits C, D, E, and F. Shonda Cline testified that Exhibit C shows the area where she tripped and fell, but that Exhibits D, E, and F do not. None of these photographs were included with the deposition transcripts filed in the trial court on October 4, 2021.

circumstances excused Shonda Cline's failure to observe the defect and avoid it. In support of appellants' memorandum in opposition, appellants submitted the affidavit of their trial counsel wherein counsel authenticated and described several photographs taken by her law clerk outside the Rusty Bucket on September 16, 2021. Market Street moved the trial court to strike the affidavit and photographs.

{¶ 10} On January 10, 2022, the trial court issued a decision and entry granting Market Street's motion for summary judgment and granting the motion to strike.[3] In granting summary judgment for Market Street, the trial court concluded: "Upon reviewing Plaintiff's deposition, admitted exhibits, and the arguments made by counsel, the Court finds that the sidewalk area where Plaintiff tripped was open and obvious as a matter of law." (Jan. 10, 2022 Decision & Entry at 5.) The trial court further found: "Based on the evidence presented, the Court does not find there were attendant circumstances at play that would reduce the degree of care that an ordinary person would exhibit at the time of the incident." *Id*. at 6. The trial court's decision concludes: "Defendant is entitled to judgment as a matter of law." *Id*.

{¶ 11} Appellants timely appealed to this court from the judgments issued on August 13, 2021, and January 10, 2022.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Appellants assign the following as trial court error:

> [1.] The trial court erred in granting defendant, Ohio Equities', motion to dismiss.

> [2.] The trial court erred in denying plaintiffs' motion to amend their complaint.

> [3.] The trial court erred in granting defendant, Market Street Associates', motion for summary judgment.

## III. STANDARD OF REVIEW

{¶ 13} "Summary judgment under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being

---

[3] Appellants do not challenge the trial court's ruling on the motion to strike.

adverse to the party opposing the motion." *Nalluri v. Jones*, 10th Dist. No. 19AP-779, 2020-Ohio-4280, ¶ 13, citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). "The moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory allegations that the nonmoving party has no evidence to prove its case." *Bremar v. Ohio Univ.*, 10th Dist. No. 20AP-513, 2022-Ohio-1382, ¶ 13, citing *Nalluri* at ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "Rather, the moving party must point to some evidence that affirmatively demonstrates the nonmoving party has no evidence to support each element of the stated claims." *Bremar* at ¶ 13, citing *Nalluri* at ¶ 13. " '[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' " *Nalluri* at ¶ 13, quoting *Dresher* at 293.

{¶ 14} Appellate review of summary judgment is de novo. *Blank v. Bluemile, Inc.*, 10th Dist. No. 20AP-200, 2021-Ohio-2002, ¶ 15, citing *Hill v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-88, 2021-Ohio-561, ¶ 14, citing *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29. " 'Thus, we conduct an independent review of the record and stand in the shoes of the trial court.' " *Hill* at ¶ 14, quoting *Nalluri* at ¶ 14, citing *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, ¶ 11 (10th Dist.). "Our review permits no deference to the trial court's determination." *Bremar* at ¶ 14, citing *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.), citing *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6, (10th Dist.). "We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it." *Columbus Steel Castings Co. v. Transp. & Transit Assocs., LLC,* 10th Dist. No. 12AP-970, 2014-Ohio-272, ¶ 28, quoting *Cashlink, LLC v. Mosin, Inc.*, 10th Dist. No. 12AP-395, 2012-Ohio-5906, ¶ 14.

## IV. LEGAL ANALYSIS
### A. ASSIGNMENTS OF ERROR

#### 1. Appellants' Third Assignment of Error

{¶ 15} Because our ruling on appellants' third assignment of error disposes of appellants' remaining assignments of error, we shall consider it first. In appellants' third

assignment of error, appellants contend that the trial court erred when it granted summary judgment in favor of Market Street.  We disagree.

{¶ 16}  There is no dispute that appellants were invitees of the Rusty Bucket at the time Shonda Cline sustained her injuries.  An invitee is a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner.  *Simms v. Penn Natl. Gaming, Inc.*, 10th Dist. No. 21AP-185, 2022-Ohio-388, ¶ 21, citing *Carpenter v. Mt. Vernon Gateway, Ltd.*, 5th Dist. No. 13CA6, 2014-Ohio-465, ¶ 19, citing *Broka v. Cornell's IGA Foodliner, Inc.*, 5th Dist. No. 12CA100, 2013-Ohio-2506, ¶ 20, citing *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315 (1996).  The owner or occupier of the premises owes its invitees a duty to exercise ordinary care to maintain its premises in a reasonably safe condition, such that its invitees will not unreasonably or unnecessarily be exposed to danger.  *Simms* at ¶ 20, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985).  However, a premises owner is not an insurer of its invitees' safety against all forms of accident that may occur on its premises.  *Simms* at ¶ 20, citing *Gladon* at 315.  "No presumption or inference of negligence arises from the mere occurrence of an accident or from the mere fact that an injury occurred."  *Byrd* at ¶ 9, citing *Barker v. Wal-Mart Stores, Inc.*, 10th Dist. No. 01AP-658, 2001 Ohio App. LEXIS 5965 (Dec. 31, 2001).  " 'Rather, "there must be direct proof of a fact from which the inference can reasonably be drawn." ' "  *Byrd* at ¶ 9, quoting *Balcar v. Wal-Mart*, 10th Dist. No. 12AP-344, 2012-Ohio-6027, ¶ 10, quoting *Parras v. Std. Oil Co.*, 160 Ohio St. 315, 319 (1953).

{¶ 17}  "A premises owner owes no duty to protect an invitee from dangers that are known to the invitee or are so obvious and apparent to the invitee that he or she may be reasonably expected to discover them and protect him or her against them."  *Simms* at ¶ 22, citing *Sidle v. Humphrey,* 13 Ohio St.2d 45 (1968), paragraph one of the syllabus.  Under Ohio law, an open and obvious hazard is itself a warning, such that a premises owner may reasonably expect invitees to discover the hazard and take appropriate measures to protect themselves against it.  *Simms* at ¶ 22, citing *Thompson v. Ohio State Univ. Physicians, Inc.*, 10th Dist. No. 10AP-612, 2011-Ohio-2270, ¶ 11.  Accordingly, "when a danger is open and obvious, a premises owner owes no duty of care to individuals lawfully on the premises."

*Simms* at ¶ 22, citing *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 14.

**{¶ 18}** In *Simms*, this court explained:

> Open and obvious dangers' are neither hidden, concealed from view, nor undiscoverable upon ordinary inspection. A person does not need to observe the dangerous condition for it to be an 'open-and-obvious' condition under the law; rather, the determinative issue is whether the condition is observable. Even in cases where the plaintiff did not actually notice the condition until after he or she fell, this court has found no duty where the plaintiff could have seen the condition if he or she had looked.

(Citations omitted.) *Simms* at ¶ 23.

**{¶ 19}** A pedestrian using a public sidewalk is not required to constantly look downward, but a pedestrian is under a duty to care for their own safety as those of ordinary carefulness and prudence would observe. *Harrigill v. Thompson Concrete, Ltd.*, 10th Dist. No. 17AP-451, 2017-Ohio-9201, ¶ 11, citing *Grossnick v. Germantown*, 3 Ohio St.2d 96, 104 (1965). This court has explained that "a pedestrian's failure to avoid an obstruction because he or she did not look down is no excuse." *Cordell v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 08AP-749, 2009-Ohio-1555, ¶ 10. Indeed, "[a] pedestrian has a duty to look for and avoid known and obvious cracks in the walkway surface." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-787, 2013-Ohio-5106, ¶ 9.

**{¶ 20}** Whether a danger is open and obvious is ordinarily a question of law. *Szerszen v. Summit Chase Condos.*, 10th Dist. No. 09AP-1183, 2010-Ohio-4518, ¶ 10. "Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law." *Id.*, citing *Klauss v. Marc Glassman, Inc.*, 8th Dist. No. 84799, 2005-Ohio-1306, ¶ 18. "However, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Szerszen* at ¶ 10.

**{¶ 21}** In *Jenkins*, this court noted that "[t]he law regarding defects in sidewalks and related issues arising therefrom is well-established. Landowners are not liable as a matter of law for minor defects in sidewalks and other walkways because these are commonly encountered and pedestrians should expect such variations in the walkways. A pedestrian

has a duty to look for and avoid known and obvious cracks in the walkway surface." *Id*. at ¶ 9, citing *Backus v. Giant Eagle, Inc.*, 115 Ohio App.3d 155, 157 (7th Dist.1996).

{¶ 22} Looking at Exhibit B, it does appear that the bricks in the area where Shonda Cline claims to have fallen lack some uniformity in size, shape, and height, and there is some deviation in the spacing between bricks. One brick in the area circled by Shonda Cline appears to be missing, leaving a slight depression. The depression appears to be filled with dirt and does not appear to be very deep. Because only one brick is missing, the depression is easily observed with the naked eye as it is much darker in color than the bricks.

{¶ 23} Due to the two-dimensional nature of the photograph, the perspective from which they were taken, and the lack of any measurements, it is difficult to determine from looking at Exhibit B, the extent of the deviation in height among the bricks and between the different surfaces. Shonda Cline was unable to estimate the deviation in height during her deposition testimony either from memory or upon viewing Exhibit B. The photographs of the area taken by Tim Cline and marked as Exhibits A and B do not evidence a deviation in height or in spacing of the bricks that could reasonably be considered substantial. There may also be a slight discrepancy in height between the bricks nearest the concrete curb and the curb itself, but the deviation in height between the two surfaces is impossible to determine by looking at either of the two photographs taken by Tim Cline.

{¶ 24} Shonda Cline offered the following testimony about her fall:

Q. You indicated you tripped on the sidewalk. How far back from the curb would it have been that you tripped?

A. I don't know.

Q. And what specifically did you trip on?

A. A brick sticking up.

Q. And just one brick was sticking up to your recollection, or was there more than one?

A. I do not know.

Q. And how high was the brick sticking up?

A. I do not know.

Q. Was it more than two inches sticking up?

A. I do not know.

Q. And when you say you do not know, does that mean you did know at one point and you don't remember or you never knew?

A. I never knew.

(July 12, 2021 Dep. Tr. at 44.)

{¶ 25} Upon de novo review, we find that the evidence submitted in connection with the motion for summary judgment does not permit a reasonable conclusion that a substantial defect existed in the sidewalk where Shonda Cline tripped and fell on December 31, 2018. Moreover, Shonda Cline admitted that she was looking straight ahead at her family members as they entered their vehicle parked at the curb, she was not looking down at the sidewalk when she tripped and fell. In her deposition, Shonda Cline acknowledged she was familiar with the sidewalk in front of the Rusty Bucket as she estimated she had walked on the sidewalk on more than 20 occasions. In her deposition, Shonda Cline testified where she was looking just before she tripped:

Q. And before you step with that right foot, did you look down at the area where you stepped before the trip?

A. I don't think so.

Q. Now looking at [Exhibit C], if you had looked at it would you have seen that area?

A. I don't know. I don't think so.

Q. And why not?

A. I don't know.

Q. Is there anything preventing you from seeing it on that day?

A. No.

(Dep. Tr. at 56-57.)

{¶ 26} Based on our review of the evidence, and construing that evidence in appellants favor, the only reasonable conclusion to reach is that Shonda Cline tripped and fell over a relatively insubstantial defect in the sidewalk that was readily observable and easily avoided by any pedestrian exercising a reasonable degree of care for his or her own safety. *Jenkins* at ¶ 18. (Summary judgment for prison was appropriate where the only reasonable conclusion to be drawn from the evidence was that the defect in the sidewalk over which appellant fell was both insubstantial and open and obvious.) Accordingly, we

agree with the trial court's conclusion that Market Street owed no duty to appellants with regard to the defect in the sidewalk over which she tripped and fell. *See Simms* at ¶ 34, (summary judgment in favor of casino on customer's negligence complaint was warranted where customer testified that the change in elevation between the concrete slabs in the sidewalk over which she fell was less than two inches and customer acknowledged that the deviation was obvious to anyone who looked down). *Callentine v. Mill Invests., LLC*, 5th Dist. No. 2017 AP 06 0014, 2017-Ohio-8634, (trial court properly granted summary judgment in favor of the property owners on appellant's negligence claim based on a fall because undisputed evidence showed the deviation in height between the two concrete slabs appellant tripped over was less than two inches and appellant admitted he would have noticed the change in elevation if he had looked down). *Carpenter v. Mt. Vernon Gateway, Ltd.,* 5th Dist. No. 13CA6, 2014-Ohio-465, (granting summary judgment in favor of the property owner where undisputed evidence showed the defect was 1.5 inches deep and there was nothing diverting the plaintiff's attention when she walked); *Galo v. Carron Asphalt Paving, Inc.*, 9th Dist. No. 08CA009374, 2008-Ohio-5001, (Trial court did not err when it entered judgment for property owner where there was no dispute there was just a 1.5 inch difference in height when the plaintiff testified she would have seen the ridge if she had looked down.). Because we find no reasonable trier of fact could conclude, on this record, the alleged defect that caused Shonda Cline to fall was either substantial or latent, Market Street owed no duty to appellants with respect to the defect. *See Simms* at ¶ 34.

{¶ 27} Appellants next contend that even if the defect causing Shonda Cline to trip and fall was open and obvious there is a factual issue whether the attendant circumstances excused her failure to observe the defect and avoid it. Once again, we disagree.

{¶ 28} The existence of "attendant circumstances" may excuse a pedestrian's failure to avoid an open and obvious hazard. *Jenkins* at ¶ 16. "An attendant circumstance must be so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care of an ordinary person would exercise." *Id.*, citing *Cummin v. Image Mart, Inc.,* 10th Dist. No. 03AP-1284, 2004-Ohio-2840, ¶ 10. "The attendant circumstances must, taken together, divert the attention of the pedestrian, significantly enhance the danger of the defect, and contribute to the fall." *Jenkins* at ¶ 16, citing *Barrett v. Ent. Rent-A-Car Co.*, 10th Dist. No. 03AP-1118, 2004-Ohio-4646, ¶ 14.

**{¶ 29}** There is no precise definition of attendant circumstances. *Simms* at ¶ 30, citing *Mulcahy v. Best Buy Stores, LP*, 5th Dist. No. 13CAE060051, 2014-Ohio-1163, ¶ 20, citing *Carter v. Miles Supermarket*, 8th Dist. No. 95024, 2010-Ohio-6365, ¶ 18. "Attendant circumstances are factors that contribute to a fall and are beyond the injured party's control." *Simms* at ¶ 30, citing *Kraft v. Johnny Biggs Mansfield, LLC*, 5th Dist. No. 2012 CA 0068, 2012-Ohio-5502, ¶ 24. In *Jenkins*, this court set out a nonexclusive list of possible attendant circumstances surrounding a trip and fall on a sidewalk, including "poor lighting, a large volume of pedestrian traffic, the visibility of the defect, the overall condition of the walkway, and whether the nature of the site is such that one's attention would easily be distracted." *Id*. at ¶ 16, citing *Humphries v. C.B. Richard Ellis, Inc.,* 10th Dist. No. 05AP-483, 2005-Ohio-6105, ¶ 20.

**{¶ 30}** According to appellants, the specific circumstance that reasonably excused Shonda Cline's failure to observe and avoid the hazard in this case was: "plaintiff and her 3 other family members were going to their car parked at the curb and opening the doors when she tripped and fell." (Appellants' Brief at 27.) Shonda Cline testified however, she was looking straight ahead at her relatives as they entered their vehicle when she tripped and fell; she did not state she was distracted. She also acknowledged that there was nothing preventing her from seeing the alleged defect in the sidewalk had she looked down. Accordingly, there was no evidence produced by appellants that would permit a reasonable conclusion that on December 31, 2018, Shonda Cline was distracted by circumstances beyond her control that significantly enhanced the danger to her and contributed to her fall. *See Simms* at ¶ 32, (normal flow of customers traffic in and out of an establishment is not a circumstance so significant or unusual as to rise to the level of attendant circumstances), citing *Kraft* at ¶ 26, (The proximity of the raised sidewalk portion to the entrance and corresponding pedestrian traffic, alleged shadows on the sidewalk, and the bag appellant was carrying when she tripped and fell are not so significant or unusual to be considered "attendant circumstances" precluding summary judgment on appellant's negligence claim.).

**{¶ 31}** Based on the foregoing, we hold that the trial court did not err when it granted summary judgment in favor of Market Street as to the negligence and loss of consortium claims. Appellants' third assignment of error is overruled.

**2. Appellants' First and Second Assignments of Error**

**{¶ 32}** In appellants' first assignment of error appellants contend that the trial court erred in granting Ohio Equities' motion to dismiss, and in appellants' second assignment of error appellants contend that the trial court erred in denying their motion to amend their complaint.

**{¶ 33}** In overruling appellants' third assignment of error, we have determined that the alleged defect in the sidewalk was an open and obvious hazard, as a matter of law. Consequently, any error with respect to the trial court's decision to deny appellants' leave to amend their complaint and grant Ohio Equities' motion to dismiss is harmless error. In other words, because the hazard on the sidewalk in front of the Rusty Bucket was open and obvious to Shonda Cline, as a matter of law, appellants cannot establish the critical element of duty in a negligence action against the property manager, as a matter of law. Thus, appellants' first and second assignments of error are rendered moot by our ruling on appellants' third assignment of error. App.R. 12(A). *See also Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 13, citing *Robinson v. Kokosing Constr. Co., Inc.,* 10th Dist. No. 05AP-770, 2006-Ohio-1532, ¶ 16.

## V. CONCLUSION

**{¶ 34}** Having overruled appellants' third assignment of error and having determined that appellants' first and second assignments of error are moot, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

————————————